# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DIGIACOMO, | Case No.: 1:19-cv-00494-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Michael Digiacomo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DBI") under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 6, 8, 18.)

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for a period of disability and DBI on August 6, 2015, alleging disability beginning January 1, 2014. AR 165-166.[3] Plaintiff's application was denied initially and on reconsideration and he subsequently requested a hearing before an ALJ. AR 61-88, 104-105. ALJ Matilda Surh held a hearing on October 16, 2017, and issued an order denying benefits on February 9, 2018. AR 19-60. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 8-18, 163-164. This appeal followed.

**Relevant Hearing Testimony**

The ALJ held a hearing on October 16, 2017, in Fresno, California. Plaintiff appeared in person with his attorney, Jonathan Pena. Impartial Vocational Expert ("VE") Lawrence Haney also appeared. AR 36.

In response to questioning by the ALJ, Plaintiff testified that he is married, has three children aged twenty-two, eighteen, and ten, and lives in a house with his family. He graduated from high school and attended two years of community college but did not receive an associate degree or any vocational certificates. Plaintiff does not work and receives support through CalViva and food stamps. His wife also was not working at the time of the hearing but was looking for work. AR 40-41.

When asked about his work history, Plaintiff testified that he worked in sanitation for a bakery for twenty years and his duties included cleaning ovens and machines. In his final two years of work, he also performed pest control duties, including checking rat traps, spraying for pests, and doing paperwork. The heaviest weight he had to lift and carry was approximately ten pounds or less while performing pest control and less than twenty pounds while working in sanitation. Plaintiff stopped working because his employer closed down the facility where he worked in 2014. Plaintiff subsequently looked for the same type of work but was unable to find any positions. AR 41-42.

Plaintiff testified that he feels that he is unable to work because of his fatigue due to Crohn's disease and his psoriatic arthritis. On average, he uses the restroom ten to seventeen times per day. He

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

has had Crohn's disease since 2010 and his treatment includes Humira every other week as well as Mercaptopurine and Entocort. Plaintiff testified that his medication helps but hasn't cured him and he's never been in remission. He has tried different medications, and his current medications seem to work best for him. Plaintiff does not currently have any side effects from his medications. AR 43-44, 47.

When asked about his daily activities, Plaintiff testified that he can do the dishes but cannot do yard work. Plaintiff used to do yard work but, after he got sick, his sons began to take over those chores. He can prepare simple meals and drive himself. A typical day for Plaintiff includes taking his kids to school, attending their events, coming home, eating something, and doing laundry. By the time he gets home he is exhausted from fatigue. Plaintiff drops his kids off at school at approximately 9:00 a.m. and then takes a nap for approximately an hour or as long as he can. He naps almost daily and if he is unable to do so in the morning he will take a nap in the afternoon. Plaintiff spends his time sitting and reading. He cannot read a whole book in one sitting and needs to get up and move around. Plaintiff testified that he can sit for fifteen to twenty minutes before he must stand and move around due to back pain. Plaintiff's daily activities also include feeding his bird and dog, sitting outside, eating, and making calls if needed. Plaintiff picks up his children from school unless he is unable to leave the toilet, in which case he asks his wife to pick them up. In a typical week, he asks his wife to pick up his children at least once or twice. AR 44-47.

Plaintiff further testified that he underwent court ordered treatment after attempting suicide. He has seen a psychiatrist regularly for thirty years. In response to questioning by his attorney, Plaintiff testified that his court ordered treatment occurred for two hours once a week and lasted for three months. He had no issues or trouble staying or getting to class and the consequence of not completing the class would have been jail time. The charge that led to the classes was a DUI which occurred when Plaintiff attempted suicide and was in an accident. Plaintiff completed the course in November of 2016. Plaintiff also attempted suicide approximately one-to-two weeks before the hearing and was taken to the hospital. Plaintiff has thoughts of suicide approximately once per week. He has emergency numbers and resources that he can call when he has suicidal thoughts and has attempted to do so a few times, but typically makes an appointment with his psychiatrist when he has suicidal

3

thoughts. Plaintiff further testified that he has a panic disorder and an anxiety disorder. When experiencing anxiety, he has chest paints, sweating, gets cold, and feels like he is going to have a heart attack. Plaintiff's panic attacks are triggered by family and by worry. AR 48-52.

Plaintiff further testified that he has had incidents within and outside of the home where he did not make it to the restroom. Plaintiff does not wear Depends and when he has an accident he goes home, washes his clothes, and takes a shower. During his court ordered classes, Plaintiff had accommodations to use the restroom and only had to go a few times. Plaintiff has good days and bad days and his symptoms have remained the same with medication. According to Plaintiff, his arthritis effects his lower back and is an autoimmune deficiency related to his Chron's disease. Plaintiff experiences pain all the time and this pain impacts his abilities to do activities like working on his family's farm, standing too long, riding motorcycles, going to the lake, and skiing. If he needs to attend one of his children's events, Plaintiff will not eat that day so that he does not have an accident. AR 52-55.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE, Lawrence Haney. The VE testified that Plaintiff's work history included industrial cleaner, classified as medium but performed at a light level. The ALJ also asked the VE hypothetical questions. The ALJ asked the VE to assume an individual with the same age, education, and work experience as Plaintiff for all hypotheticals. For the first hypothetical, the ALJ asked the VE to assume this hypothetical individual can lift fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for six out of eight hours, has no limits on sitting, can frequently climb ramps and stairs, stoop, and crouch, occasionally climb ladders, ropes, or scaffolds, and is capable for performing detailed tasks. The VE testified that Plaintiff's past work would be available. AR 56-57.

For the second hypothetical, the ALJ asked the VE to assume the additional limitation that this individual would need ready access to a restroom no more than five minutes away. The VE testified that there is no Dictionary of Occupational Titles classification or database where he could analyze the restriction of taking no more than five minutes to get to a restroom. However, the VE thought that in five minutes a person can walk a couple of blocks so within a factory setting or any other type of industrial setting the VE did not think that would be a preclusion and Plaintiff's past work would be

available. AR 57-58.

For the third hypothetical, the ALJ asked the VE to assume that the additional limitation that the individual would need to use the restroom outside of normal breaks potentially twice an hour. The VE testified that there would be no jobs available. AR 58.

Finally, Plaintiff's attorney asked the VE hypothetical questions. Plaintiff's attorney asked the VE to assume the same individual described in the ALJ's second hypothetical, except that this individual would be off task fifteen percent of the time due to psychiatric symptoms. The VE testified there would be no work available. AR 58-59.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 22-31. Specifically, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, and Plaintiff had not engaged in substantial gainful activity since October 14, 2014, the alleged onset date. AR 24. Further, the ALJ identified undifferentiated spondyloarthropathy, Chron's disease, generalized anxiety disorder, mild major depressive disorder, moderate alcohol use disorder in early remission, and moderate cannabis use disorder in early remission as severe impairments. AR 24. The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 24-25. Based on a review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work except that he could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for six hours in an eight-hour work day, sit for six hours in an eight-hour work day, frequently stoop and climb ladders, ropes and scaffolds, could not have prolonged exposure to extreme cold or hot temperatures, and can perform detailed tasks. AR 26-30. With this RFC, the ALJ determined that Plaintiff was capable of performing past relevant work as an industrial cleaner. AR 30. The ALJ therefore concluded that

Plaintiff was not under a disability, as defined in the Social Security Act, from October 14, 2014, through the date of the ALJ's decision. AR 30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[4]

Plaintiff raises the following challenges to the ALJ's decision: (1) the ALJ erred in discounting Plaintiff's testimony regarding his Chron's disease symptoms; and (2) the ALJ failed to develop the record regarding Plaintiff's mental impairments. (Doc. No. 15.)

### A. The ALJ properly evaluated Plaintiff's subjective complaints.

According to Plaintiff, the ALJ erred because she acknowledged that Plaintiff suffers from diarrhea and Crohn's disease flares but wholly rejected all of Plaintiff's symptoms related to his Chron's disease and found that Plaintiff did not suffer from Chron's disease to the degree suggested at the hearing. (Doc. No. 15 at 10-11.) Plaintiff asserts that the ALJ's basis for this rejection is unexplained and there are no appropriate limitations included in the RFC. (*Id.* at 11.) Furthermore, even if the ALJ correctly concluded that Plaintiff's report of ten to seventeen bowel movements daily overstated his symptoms, the RFC does not reflect the reports of frequent diarrhea within the treatment records the ALJ found credible. (*Id.*) The Commissioner, in turns, contends that the ALJ properly rejected Plaintiff's subjective symptom testimony as inconsistent with clinical findings, because Plaintiff improved with treatment, and medical opinion evidence discounted Plaintiff's complaints of greater restrictions. (Doc. No. 16 at 8-10.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted his statements concerning the intensity,

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

persistence and limiting effects of those symptoms. AR 27. The ALJ did not find that Plaintiff was malingering and was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony.

As an initial matter, contrary to Plaintiff's contention, the ALJ did not fail to explain the basis for her rejection of Plaintiff's symptoms related to his Crohn's disease. (*See* Doc. No. 15 at 11.) As the Commissioner notes in his opposition, the ALJ first discounted Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms because it was not entirely consistent with the objective medical evidence. AR 27-28. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, in addition to finding that Plaintiff's testimony was inconsistent with the medical record, the ALJ also noted that Plaintiff's Chron's disease improved with medication. AR 27-28. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding that improvement with conservative treatment undermined allegations of disabling symptoms); *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]"). The ALJ accordingly provided specific, clear and convincing reasons for discounting Plaintiff's testimony.

The ALJ's opinion recognized that the medical evidence supported a diagnosis for Crohn's disease, consistent with Plaintiff's testimony, but records reflected bowel movements at a less significant degree of occurrence. AR 27. Specifically, the ALJ noted that, in January of 2014, Plaintiff reported up to five to six bowel movements per day with abdominal cramping with the use of Humira injections every two weeks. AR 27, 353. In May of 2014, Plaintiff reported two to six bowel movements per day. AR 27, 338. In July of 2014, Plaintiff denied abdominal pain and in August of 2014 reported two to six bowel movements per day with a stable weight. AR 27, 333, 337. In September of 2014, Plaintiff reported difficulty performing his job and six to ten bathroom visits per day although weight was stable. AR 27, 330. By April of 2015, Plaintiff's medical records noted increased appetite, twenty-pound weight gain, and his Crohn's disease was "under control after getting Humira injections." AR 27-28, 327, 527. In July of 2014 Plaintiff reported ten or more bathroom visits per day but in August of 2015 he had benign abdominal examination findings and providers

recommended continued management as an outpatient with no modification in his current therapy. AR 28, 325, 715. Medical records indicated that Plaintiff's Crohn's disease was in remission with his current treatment. AR 28, 460.

The ALJ further explained that Plaintiff's 2016 medical records made few references to Chron's disease until December 2016, when Plaintiff's provider recommended he see a gastroenterologist to clarify if his Crohn's was more active and whether medication changes were necessary. AR 28, 801. In March of 2017, Plaintiff reported that his Crohn's had been better controlled, his eating improved, and felt comfortable working at home on his family's ranch. AR 28, 585, 944. Plaintiff experienced a Crohn's flare in April of 2017, which was resolving by June of 2017. AR 28, 883, 891. In August of 2017, Plaintiff reported medication had cut his flares in half and he visits his gastroenterologist for the flares and increases his Humira. AR 28, 961. Overall, the ALJ concluded that these records reflected some degree of limitations "but not work preclusive restrictions." AR 28.

Plaintiff recites certain medical evidence from the record and contends that the RFC determination is unsupported by substantial evidence because "the record . . . shows that the intensity of Plaintiff's symptoms varied with his Crohn's flares, and these flares affect Plaintiff's functional capacity and necessitate access to a bathroom and additional restroom breaks." (Doc. No. 15 at 13.) However, Plaintiff does not identify any objective medical evidence that the ALJ failed to consider or cite to any objective medical or opinion evidence that is inconsistent with the ALJ's RFC. (Doc. No. 15 at 12.) Notably, none of the medical opinions in the record included a need for access to a bathroom or additional restroom breaks as a functional limitation. *See* AR 61-88, 895-907. While Plaintiff is correct that an RFC requires evidentiary support and an ALJ must provide a sufficient connection between the medical evidence and the RFC to allow for meaningful review, Plaintiff does not identify any such errors in the ALJ's decision.  (*See* Doc. No. 15 at 11, 13.)  *See Tackett v. Apfel,* 180 F.3d 1094, 1102 (9th Cir. 1999); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006);

Plaintiff cites *Tate v. Astrue,* 2013 WL 211259, at *5 (E.D. Cal. Jan. 18, 2013) for the proposition that the ALJ in this case "identified no connection between the medical evidence of

1 severe Crohn's disease and [the] RFC[.]" (Doc. No. 15 at 13.) In *Tate,* there was conflicting evidence before the ALJ regarding the extend of the plaintiff's educational background and the ALJ was therefore required to resolve the conflict. *Tate*, 2013 WL 211259, at *5. The ALJ in that case credited some evidence and disregarded Plaintiff's testimony at the hearing but provided "no reasons" as to why the evidence was resolved in that manner. *Id.* at *6.

Here, in contrast, the ALJ explained that Plaintiff's conflicting testimony regarding the severity of his Crohn's disease was discounted due to inconsistency with the medical record and improvement with medication. AR 27-28. The ALJ linked Plaintiff's symptom testimony that she found not to be credible to particular parts of the record. AR 27-28. The ALJ first summarized Plaintiff's testimony regarding the persistence, intensity, frequency, and limiting effects of his symptoms. AR 27. The ALJ then devoted approximately four paragraphs to detailing the specific medical evidence in the record that did not support Plaintiff's testimony regarding the severity of his Chron's disease. AR 23-25. Unlike *Tate,* the Court need not speculate about the basis of the ALJ's determination or substitute its conclusions for the ALJ's in conducting review because the ALJ clearly indicated what evidence she found to be inconsistent and explained how she resolved the conflicting evidence at issue. In light of the ALJ's extensive discussion and comparison of the relevant testimony to the record, the Court is satisfied that the ALJ built "an accurate and logical bridge from the evidence to [her] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *See Tate,* 2013 WL 211259, at * 5 (citations and quotation marks omitted).

Plaintiff further argues that the ALJ erred because, even if Plaintiff overstated his symptoms, the RFC does not reflect reports of frequent diarrhea that were found credible. (Doc. No. 17 at 2.) Plaintiff relies on *Leonard v. Colvin,* 633 Fed.Appx. 362, 364 (9th Cir. 2015) in arguing that the ALJ was required to include "reports of frequent diarrhea within the treatment records which the ALJ appears to have found credible" when developing the RFC. (Doc. No. 17 at 2; *see also* Doc. No. 15 at 11.) However, in *Leonard,* the Ninth Circuit found that the court erred because, even disregarding the plaintiff's subjective symptom testimony regarding the effects of his Crohn's disease, the state agency physician's RFC assessment supported that the plaintiff had a need for frequent trips to the

bathroom *and* treatment notes indicated that the plaintiff had about five to seven bowel movements daily. *Leonard,* 633 Fed.Appx. at 364. Here, as noted above, none of the medical opinions in the record state that Plaintiff required access to a bathroom or additional restroom breaks as a functional limitation. *See* AR 61-88, 895-907.

The determination of a claimant's RFC is wholly within the province of the ALJ. *See* 20 C.F.R. § 404.1546(c); SSR 96-8p.  The RFC assessment is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence.  *See* 20 C.F.R. 404.1545(a)(1); SSR 96-8p.  Here, the ALJ cited to the medical evidence in the record which was inconsistent with Plaintiff's testimony regarding the severity of his Chron's disease. It does not follow that the ALJ was necessarily required to develop functional limitations derived solely from that medical evidence which discredited Plaintiff's testimony. The ALJ's decision recognizes that Plaintiff has some work limitations, however, she discredits Plaintiff's testimony that his limitations due to Crohn's disease render him completely unable to work. In reaching her decision, the ALJ acted appropriately within her responsibility to determine Plaintiff's RFC from the administrative record as a whole. The RFC assessment here is consistent with the medical testimony and adequately captures Plaintiff's limitations. *See, e.g., Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008) (finding no error in failure to include limitations in concentration, persistence, or pace where medical opinions did not establish any such limitations). Thus, the ALJ did not err in failing to include a restriction for access to a restroom or additional restroom breaks as part of the RFC.

Plaintiff also argues that the ALJ's finding that Plaintiff's symptoms improved with medication lacked the support of substantial evidence because intermittent periods of improvement do not invalidate the severity of Plaintiff's Chron's disease. (Doc. No. 15 at 13.) However, Plaintiff's argument misconstrues the scope of review on appeal. The ALJ is the trier of fact and she is permitted to reject testimony regarding subjective symptoms as long as she makes specific findings justifying that decision. *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989); *see also Bunnell v. Sullivan,* 947 F.2d 341, 346 (9th Cir. 1991) ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." ); *Hayatgheyb v. Callahan,* 120

11

F.3d 268 (9th Cir. 1997) (upholding an ALJ's finding that the plaintiff was not credible where he "made sufficient inquiries into [plaintiff's] daily routine and medical and work history, and made specific findings to justify her rejection of his pain testimony[.]" (citations omitted)). The Court's scope of review of decisions granting or denying Social Security disability is accordingly limited. *Hall v. Sec'y of Health, Educ. & Welfare,* 602 F.2d 1372, 1374 (9th Cir.1979) (observing that Congress has mandated a very limited scope of judicial review of the Commissioner's decisions granting or denying Social Security disability benefits). The Court must consider the record as a whole, taking into account both the evidence that supports and the evidence that detracts from the Commissioner's decision; it is not the court's role to re-weigh the evidence or substitute its own judgment. *Winans v. Bowen,* 853 F.2d 643, 644–45 (9th Cir.1987). If there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ may resolve the conflict so long as there is "more than one rational interpretation of the evidence." *Sprague,* 812 F.2d at 1230. Where evidence may support more than one rational interpretation, "the Court may not substitute its judgment for that of the Commissioner." *Tackett,* 180 F.3d at 1097; s*ee also Matney on Behalf of Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir.1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

In this case, considering the record as a whole, there is substantial evidence supporting the ALJ's finding that Plaintiff's symptoms improved with treatment. As the ALJ explained in her decision, treatment records in September 2015 noted that his condition was in remission, records in 2016 contained few references to Chron's flares, and in March 2017 Plaintiff reported that his Chron's was better controlled. AR 28, 460, 585, 944, 961. Although Plaintiff may disagree with the ALJ's assessment of the evidence, the ALJ in this case properly discharged her responsibilities of determining credibility and resolving any conflicts or ambiguities in the evidence. Her interpretation of the evidence is rational therefore must be upheld. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citation omitted); *Morgan v. Comm'r of Soc.*

*Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.") (citation omitted). Having reviewed the record, including evidence that supports and detracts from the ALJ's finding, the Court finds that the ALJ's interpretation regarding Plaintiff's improvement with medication is rational and supported by substantial evidence. The ALJ therefore did not err in discounting Plaintiff's subjective symptom testimony due to his improvement with medication.

**B.     The ALJ did not err in failing to request a medical expert.**

Plaintiff further argues that the ALJ failed to adhere to her duty to fully and fairly develop the record by not requesting a medical expert in this case. (Doc. No. 15 at 13-15.) Specifically, Plaintiff contends that the ALJ relied on the opinions of nonexamining state agency physicians regarding Plaintiff's mental limitations and these opinions were outdated and preceded further medical records, thus the ALJ was required to obtain a medical opinion from a treating or examining source. (*Id* at 15.) The Commissioner, in turn, argues that there is no requirement that the ALJ rely on a medical source who reviewed the entire treatment record. (Doc. No. 16 at 11.) The Court agrees.

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered[.]" *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).  The ALJ's duty to "conduct an appropriate inquiry" is triggered only where evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence.  *Id.*; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The record indicates that, on November 4, 2015, Peter Bradley, Ph.D. reviewed the record, Dr. Schumacher reviewed the record and opined that Plaintiff was not significantly limited in his abilities to carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, and make simple work-related decisions. AR 71-72. Plaintiff was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to

perform at a consistent pace without an unreasonable number and length of rest periods. AR 72. On January 11, 2016, Val Bee Psy.D. performed a review of the evidence of record and affirmed Dr. Bradley's opinion. AR 81, 84-85. The ALJ considered Drs. Bradley and Bee's opinions and gave them great weight. AR 29-30. The ALJ noted that Plaintiff "primarily managed his condition with outpatient care and medications" and, "[d]espite exacerbating circumstances such as his layoff from work and his lack of continued unemployment benefits, [he] continued to manage his care with a consistent degree of services." AR 30. Additionally, the ALJ reasoned that Plaintiff's "condition lacked sufficient treatment or findings on examination to support limitations in excess of those noted herein, limiting [Plaintiff] to performing detailed tasks, as noted by the Disability Determinations Services doctors." AR 29.

Plaintiff contends that the ALJ should have obtained an opinion from a treating or examining source because the record did not contain an opinion from a physician who reviewed Plaintiff's medical records subsequent to the state agency physicians' review. (Doc. No. 15 at 15.) However, Plaintiff failed to submit any medical opinions from a treating or examining physician as to his ability to work or his functional limitations.  The burden is on the claimant to establish disability. *Terry,* 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require").  Because it is the Plaintiff's burden to present evidence of disability, the mere absence of an opinion from an examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are … disabled….").

Plaintiff's suggestion that the ALJ had a duty to further develop the record as a result of the

existence of medical records post-dating the Drs. Bradley and Bee's review is unpersuasive. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The mere existence of medical records post-dating a State agency physician's review does not in and of itself trigger a duty to further develop the record. *See, e.g., Charney v. Colvin*, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), *aff'd*, 647 F. App'x 762 (9th Cir. 2016) (finding that the ALJ did not err in relying on the opinions of state agency physicians that did not account for subsequent medical records where subsequent records were considered by the ALJ and were not inconsistent with RFC). Indeed, the opinions of the state agency physicians constitute substantial evidence supporting the ALJ's RFC assessment where they are supported by the medical record as a whole and are consistent with it. *See Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"). Although the state agency physicians' RFC assessment did not account for Plaintiff's subsequent medical records, the ALJ did consider and account for these records and found that there was insufficient evidence to support additional limitations. *See* AR 28-30. Furthermore, Plaintiff does not point to anything on those subsequent records that is materially inconsistent with the state agency physician's opinions.

Plaintiff's argument that the ALJ improperly relied on her own lay interpretation of the remaining medical data to estimate functioning is likewise unpersuasive. (*See* Doc. No. 15 at 13-14.) As noted above, the determination of a claimant's RFC is wholly within the province of the ALJ. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007). The RFC assessment is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence. *See id.* Here, the ALJ did not substitute her judgment for a competent medical opinion, play doctor, or make independent medical findings as Plaintiff contends. (*See* Doc. No. 15 at 14.) The ALJ merely found that the state agency physicians' opinions were consistent with the subsequent medical records as part of her duty to consider and weigh the relevant evidence in developing the RFC.

Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper

evaluation. The ALJ did not find that the record was ambiguous or inadequate to determine disability, nor does Plaintiff identify any ambiguous or unclear treatment notes, medical opinions, or other evidence. The ALJ summarized the medical evidence in the record, including evidence related to Plaintiff's mental impairments, and determined Plaintiff's RFC with the support of that record. AR 26-30. The record contained what appears to be Plaintiff's complete treatment records, which supported the ALJ's findings and did not present an ambiguity or inadequacy. Indeed, the Court notes that at the hearing, the ALJ asked Plaintiff's attorney if the record was complete and he responded that it was. AR 39. Under these circumstances, the Court finds that the ALJ was not obligated to further develop the record as Plaintiff suggests.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Michael Digiacomo.

IT IS SO ORDERED.

Dated: **October 28, 2020**         /s/ *Barbara A. McAuliffe*
                                   UNITED STATES MAGISTRATE JUDGE